IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEPHEN P. FAHEY, AS RECEIVER FOR AGRIDIME, LLC, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 4:25-CV-<u>1394</u> |
| TAYLOR BANG, SAM BROOKS, GLENN MURRAY, REID SCHATZMAN, AND JUSTIN WILLIAMS, | § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Stephen P. Fahey, in his capacity as Court-appointed Receiver for Agridime LLC ("<u>Plaintiff</u>" or "<u>Receiver</u>"), files this Original Complaint against Taylor Bang, Sam Brooks, Glenn Murray, Reid Schatzman, and Justin Williams (collectively, the "<u>Sales Representative Defendants</u>") and respectfully states as follows:

**I.**
**NOTICE OF RELATED CASE**

Pursuant to Local Rule 3.3, Receiver discloses what he believes to be a related case as defined by Local Rule 3.3(b). The related case is *SEC v. Agridime LLC et al.*, Civil Action No. 4:23-cv-1224-P, which is pending in the United States District Court for the Northern District of Texas, Fort Worth Division. The Honorable Mark T. Pittman is presiding.

**II.**
**OVERVIEW**

1.      On December 11, 2023, the Securities and Exchange Commission (the "<u>SEC</u>") commenced a lawsuit against Josh Link, Jed Wood, and their company, Agridime LLC

("Agridime") (collectively, the "Receivership Defendants") to halt the ongoing, fraudulent, and unregistered offering of securities and an active Ponzi scheme perpetrated by the Receivership Defendants.[1] On the same date, the Court signed an Order appointing Stephen P. Fahey as Receiver over Receivership Defendants (the "Order"). ECF No. 15.

2.      Between 2021 and 2023, Agridime raised approximately $191 million from more than 2,100 investors in multiple states, by selling investment contracts related to the purported purchase, feeding of, and later sale of cattle (the "Cattle Contracts"). ECF No. 1, ¶ 2. Agridime promised these investors artificially high, guaranteed annual returns ranging from 15% to 32% under the Cattle Contracts. *Id*. As part of its advertising, Agridime stated, "[w]e know it sounds too good to be true." *Id*. The Cattle Contracts were, in fact, too good to be true, as the Receivership Court made a finding that Agridime was operated as a Ponzi scheme since October 1, 2021. ECF No. 118.

3.      An integral part of Agridime's business model was the use of contracted sales representatives, including the Sales Representative Defendants, who engaged with individuals on behalf of Agridime to "sell and promote" the Cattle Contracts. In exchange, the salesperson would receive a 10% commission for each contract sold (the "Commissions"). The Receiver has determined that **from 2021 to 2023, Agridime paid its contracted salesforce over $11 million in Commissions**. These commission payments came not from revenue generated by legitimate business, but from monies contributed by defrauded investors.

4.      At this stage of the Receivership, the Receiver has identified substantial sums of Commissions that were paid to the Sales Representative Defendants, and, through the filing of this

---

[1]   Unless otherwise stated, citations to Court records herein are from the case styled *SEC v. Agridime LLC, et al.*, Civil Action No. 4:23-cv-1224-P.

Complaint, seeks the return of those funds to the Receivership Estate in order to make an equitable distribution to claimants.

## III.
## PARTIES

5.      The Receiver is the court appointed Receiver for the Receivership Defendants in the case styled *SEC v. Agridime, LLC et al.* pending in the Receivership Case. The Receiver is a resident and citizen of the State of Texas.

6.      Taylor Bang ("Bang") is an individual residing in Killdeer, North Dakota. Bang may be served at 196 109th Ave NW, Killdeer, North Dakota 58640, or wherever he may be found. Between January 2021 and December 2023, Bang received approximately $6,205,365.00 in Commissions traceable to the Receivership Defendants' fraudulent scheme. Bang is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

7.      Sam Brooks ("Brooks") is an individual residing in Bozeman, Montana. Brooks may be served at 68 Bushnell Road, Bozeman, Montana 59718, or wherever he may be found. Between January 2021 and December 2023, Brooks received approximately $1,217,855.00 in Commissions traceable to the Receivership Defendants' fraudulent scheme. Brooks is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

8.      Glenn Murray ("Murray") is an individual residing in Killdeer, North Dakota. Murray may be served at 651 Adams Drive, Killdeer, North Dakota 58640, or wherever he may be found. Between January 2021 and December 2023, Murray received approximately $247,400.00 in Commissions traceable to the Receivership Defendants' fraudulent scheme. Murray is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

9.      Reid Schatzman ("Schatzman") is an individual residing in Broken Arrow, Oklahoma. Schatzman may be served at 4005 W Albuquerque Pl., Broken Arrow, Oklahoma 74011, or wherever he may be found. Between January 2021 and December 2023, Schatzman received approximately $557,300.00 in Commissions traceable to the Receivership Defendants' fraudulent scheme. Schatzman is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

10.      Justin Williams ("Williams") is an individual residing in Queen Creek, Arizona. Williams may be served at 21842 S 195th Pl., Arizona 85142, or wherever he may be found. Between January 2021 and December 2023, Williams received approximately $616,533.63 in Commissions traceable to the Receivership Defendants' fraudulent scheme. Williams is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

**IV.**
**JURISDICTION AND VENUE**

11.      As the Court that appointed the Receiver, this Court has subject matter jurisdiction over any claim brought by the Receiver to execute his Receivership duties.

12.      Venue for this action is proper in the Northern District of Texas because: (1) this action is ancillary to the SEC proceeding referenced above, which is already pending in this District; (2) the Receiver was appointed in this District; and (3) this action involves Receivership Assets within the meaning of the Order, which expressly states that the Receiver is authorized, empowered and directed to institute such actions and legal proceedings as may be necessary to enforce the Order with this Court.

13.      Further, under the Sales Representative Agreements with Agridime, the Sales Representative Defendants agreed to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Tarrant County, State of Texas.

## V.
## BACKGROUND FACTS

**A.    Agridime Operated a Fraudulent Ponzi Scheme.**

14.    Agridime purported to be a cattle and meat distribution company that, before the Receiver's appointment, was operated by Josh Link and Jed Wood and headquartered in Fort Worth, Texas. With operations across several states, Agridime claimed that its "proprietary beef supply chain" allowed it to offer "guaranteed pricing" and "year-round availability" to its customers.

15.    As early as October 2021, Agridime began offering investors, through its publicly available website, unrestricted Facebook page, and team of sales representatives, an opportunity to "make money raising cattle without having to do all the work."

16.    Agridime specifically offered investors a contract to purchase calves for $2,000 a head. In exchange for $2,000, Agridime promised that it would raise the calf and, after one year and seven days, Agridime would buy back the calf at an artificially set, higher price to provide a promised return.

17.    The company offered guaranteed 15-20% yearly profits on these Cattle Contracts. The rate of return often depended on the number of cattle purchased—the more calves the investor bought, the higher the promised profit.

18.    In each Cattle Contract, the investor's role was passive. Even though the Cattle Contracts describe the transaction as a "purchase," investors never took possession of the cattle and the cattle at all times remained in Agridime's supply chain. Consequently, investors depended entirely on Agridime and its "proprietary beef supply chain" to generate returns on their investments.

19.    From January 2021 through December 2023, Agridime raised more than $240 million from more than 1,900 investors in multiple states through its sales of Cattle Contracts.

20.     The Receivership Defendants represented that investor funds would be used to purchase cattle when, in reality, Agridime's records reveal that the majority of funds generated from Cattle Contract sales (and a significant portion of the funds from all sales over time) were used to pay investors in prior Cattle Contracts that came due and/or pay commissions to their salesforce.

21.     The Receiver was appointed over Agridime on December 11, 2023. ECF No. 15. The Court in the Receivership case has made a finding that Agridime operated as a Ponzi scheme as of October 1, 2021. ECF No. 118.

**B.     Agridime Transferred Investment Proceeds from the Fraudulent Ponzi Scheme to Agridime's Sales Representatives.**

22.     Agridime used contracted salespeople to solicit investors to invest in the Cattle Contracts. Under the terms of Agridime's Sales Representative Agreement, each salesperson was appointed as Agridime's representative to sell and promote all services provided by Agridime. In exchange, the salesperson would receive a commission for each contract sold.

23.     Through May 2023, Agridime paid more than $11.1 million in Commissions to its salesforce. The Sales Representative Defendants received Commissions ranging in amounts from over $247,000 to over $6.2 million.

24.     These Commissions from the fraudulent Ponzi scheme described above were transferred by the Receivership Defendants to the Sales Representative Defendants solely for the purpose of concealing and perpetuating the fraudulent scheme. Such Commissions were paid to the Sales Representative Defendants from funds supplied by investors who bought the fraudulent Cattle Contracts. The Sales Representative Defendants either performed no services in exchange for the Commissions or performed only services that were in furtherance of the Ponzi scheme in exchange for the Commissions. *See Warfield v. Byron*, 436 F.3d 551, 558-60 (5th Cir. 2006)

(transfers made from Ponzi scheme are made with intent to defraud; broker who worked for Ponzi scheme did not provide reasonably equivalent value in return for fraudulent transfers).

26.    The Commissions the Sales Representative Defendants received are, therefore, properly considered assets of the Receivership Estate and must be returned to the Receivership Estate to compensate victims of the Agridime fraud according to principles of law and equity.

## VI.
## CAUSES OF ACTION[2]

**A.    Count One: Actual Fraudulent Transfer under TEX. BUS. & COM. CODE § 24.005(a)(1).**

26.    The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

27.    The Receiver is entitled to disgorgement of all Commissions paid to the Sales Representative Defendants because such payments constitute fraudulent transfers under applicable law. The Receivership Defendants transferred the Commissions to the Sales Representative Defendants with actual intent to hinder, delay, or defraud their creditors; as a result, the Receiver is entitled to the disgorgement of those Commissions from the Sales Representative Defendants.

28.    The Receiver may avoid transfers made with the actual intent to hinder, delay, or defraud creditors. The Receiver Defendants' operation as a Ponzi scheme is sufficient to establish the fraudulent intent behind any transfers it made. *Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011). "[T]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception." *Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007); *see also Warfield*, 436 F.3d at 558. The Receivership Defendants were running a Ponzi scheme and, to keep the scheme going, paid the Sales Representative Defendants with Commissions taken from investors.

---

[2]    To the extent necessary, the Receiver pleads and asserts each of its causes of action in the alternative.

29.     As such, the Receiver is entitled to disgorgement of all Commissions paid to the Sales Representative Defendants under TEX. BUS. & COM. CODE §§ 24.008(a)(1) and 24.009(b), and any other relief the circumstances may warrant under TEX. BUS. & COM. CODE § 24.008 or otherwise.

30.     Moreover, under applicable fraudulent transfer law, the Receiver is entitled to attorney's fees and costs for his claims against the Sales Representative Defendants. TEX. BUS. & COM. CODE § 24.013. As a result, the Receiver requests reasonable attorney's fees and costs for prosecuting his fraudulent-transfer claims against the Sales Representative Defendants.

**B.     Count Two: Constructive Fraudulent Transfer under TEX. BUS. & COM. CODE §§ 24.005(a)(2) and 24.006.**

31.     The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

32.     The Receivership Defendants paid the Commissions to the Sales Representative Defendants without receiving reasonably equivalent value and Agridime was insolvent at the time or became insolvent as a result of the transfer of the Commissions.

33.     The Receivership Defendants paid the Commissions to the Sales Representatives for unfair or no consideration. *See Warfield*, 436 F.3d at 560 (payments received for securing new investments into Ponzi scheme are avoidable); *In re Ramirez Rodriguez*, 209 B.R. 424, 434 (Bankr. S.D. Tex. 1997) ("As a matter of law, the defendant gave no value to the debtors [Ponzi scheme operators] for the commissions attributable to investments made by others pursuant to the verbal agreement with [the debtors].").

34.     As such, the Receiver is entitled to disgorgement of all Commissions paid to the Sales Representative Defendants under TEX. BUS. & COM. CODE §§ 24.008(a)(1) and 24.009(b), and any other relief the circumstances may warrant under TEX. BUS. & COM. CODE § 24.008 or otherwise.

35.    Moreover, under applicable fraudulent transfer law, the Receiver is entitled to attorney's fees and costs for his claims against the Sales Representative Defendants. TEX. BUS. & COM. CODE § 24.013. As a result, the Receiver requests reasonable attorney's fees and costs for prosecuting his fraudulent transfer claims against the Sales Representative Defendants.

**C.    Count Three: Unjust Enrichment and Money Had and Received.**

36.    The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

37.    In the alternative, the Receiver is entitled to disgorgement of any amounts paid to Sales Representative Defendants under the equitable doctrines of unjust enrichment and money had and received.

38.    After the appointment of the Receiver, it was discovered that the Sales Representative Defendants received funds that in equity and good conscience belong to the Receivership Estate for ultimate distribution to the defrauded investors.

39.    Such funds have unjustly enriched the Sales Representative Defendants, and it would be unconscionable for them to retain the funds.

40.    In order to carry out the duties delegated to him as the receiver, the Receiver seeks complete and exclusive control, possession, and custody of the Commissions received by Defendants.

## VII.
## CONDITIONS PRECEDENT

41.    All conditions precedent to recovery have been excused, performed, or have occurred.

## VIII.
## ATTORNEYS' FEES AND EXPENSES

42.     The Receiver requests an award of reasonable and necessary attorneys' fees, expenses, and court costs, pursuant to applicable laws, including but not limited to TEX. BUS. & COM. CODE § 24.013.

## IX.
## PRAYER

The Receiver respectfully requests the following:

a.  An Order providing that Commissions received by the Sales Representative Defendants were fraudulent transfers under applicable law or, alternatively, that the Sales Representative Defendants were unjustly enriched by Commissions received;

b.  An Order providing that Commissions received by the Sales Representative Defendants are property of the Receivership Estate;

c.  An Order establishing the amount of Commissions each of the Sales Representative Defendants received;

d.  An Order providing that each of the Sales Representative Defendants is liable to the Receivership Estate for an amount equaling the amount of Commissions they received;

e.  An Order requiring the Sales Representative Defendants to pay to the Receiver the Commissions they received;

f.  An award of costs, attorney's fees, and pre-judgment interest; and

g.  Such other and further relief, general or special, as this Court may deem just and proper.

Dated: December 10, 2025.             Respectfully submitted,

*/s/ Colin P. Benton*
Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com
Kyle K. Weldon
State Bar No. 24097192
kyle.weldon@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:    (817) 332-7788
Fax:           (817) 332-7789

**ATTORNEYS FOR STEVE FAHEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR AGRIDIME LLC**